IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ASHLEY LONGHORN**,

    Plaintiff,

    v.

**OREGON DEPARTMENT OF CORRECTIONS**,

    Defendant.

Civ. No. 6:21-cv-01267-MC

**OPINION & ORDER**

**MCSHANE, Judge:**

    Plaintiff Ashley Longhorn brings this employment discrimination action against her former employer, Defendant Oregon Department of Corrections ("DOC"). She brings claims alleging hostile work environment, constructive discharge, retaliation, and whistleblower retaliation under Title VII and Oregon law. Compl., ECF No. 1. DOC moves for summary judgment on all claims. Because there are disputed issues of fact, DOC's Motion for Summary Judgment, ECF No. 46, is DENIED.

1 – OPINION & ORDER

## FACTUAL BACKGROUND[1]

Plaintiff began working as a corrections officer at the Eastern Oregon Correctional Institution ("EOCI") on March 2, 2020. Compl. ¶ 7; Middleton Decl. Ex. 1, at 3, ECF No. 65. During Plaintiff's first week on the job, a female lieutenant gathered all the new female staff for a meeting and told them to keep their heads down, try to fit in, and be careful of both the adults-in-custody ("AIC") and the male staff. Middleton Decl. Ex. 1, at 4–6. Shortly after Plaintiff started at EOCI, another corrections officer, Matthew Klimek, began messaging Plaintiff about how she was liking the job. *Id.* at 4. On May 16, 2020, Plaintiff went to Klimek's home to pick up a box Klimek made for Plaintiff. Longhorn Decl. ¶ 3, ECF No. 67. Klimek sexually assaulted Plaintiff in his home.[2] *Id.* Soon after, Plaintiff told her friend and co-worker, Officer Travis Kammerzell, about the assault. *Id.* ¶ 4. On May 21, 2020, Officer Kammerzell reported the assault to Assistant Superintendents at EOCI, Andrea Neistadt and David Pedro. Pedro Decl. Ex. 1, at 1, ECF No. 50. Plaintiff met with Superintendents Neistadt and Pedro later that day but was unwilling to report the assault at that time. *Id.*

After the assault, Klimek began stalking Plaintiff at work. Longhorn Decl. ¶ 6; Middleton Decl. Ex. 1, at 8–9. He started parking next to her, watched her as she entered and exited the training facility, left gifts in her mailbox, commented to co-workers about her, and called and messaged her every day. *Id.*; Pedro Decl. Ex. 3, ECF No. 52. Plaintiff asked him to stop but he persisted. *Id.* Plaintiff started riding with Officer Kammerzell to work to avoid Klimek.

---

[1] DOC raised a number of evidentiary objections in its Reply, including hearsay, speculation, and inadmissible opinion. ECF No. 74. At summary judgment, the Court may consider "evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016). Even assuming that DOC's objections are correct, Plaintiff can avoid these evidentiary issues at trial through live testimony of the declarants. The Court therefore may consider the evidence at summary judgment.

[2] Klimek denies the sexual assault allegations.

2 – OPINION & ORDER

Middleton Decl. Ex. 1, at 8. On June 22, 2020, Plaintiff reported the sexual assault and Klimek's stalking behavior to Superintendents Neistadt and Pedro. Pedro Decl. Ex. 3. The next day, EOCI forwarded Plaintiff's report to the Oregon State Police for investigation. Middleton Decl. Ex. 15; Ex. 17, at 1, 9, ECF No. 66. Plaintiff met with a detective and reported the assault and stalking. *Id.* The state police interviewed Klimek on June 29, 2020, and EOCI placed him on paid administrative leave where he was duty-stationed at home. Rider Decl. ¶ 3, ECF No. 55; Middleton Decl. Ex. 18. Plaintiff declined a transfer to another prison, but needed to take leave from work due to panic attacks. Pedro Decl. Ex. 4, ECF No. 53; Spooner Decl. Ex. 1, at 4, ECF No. 58; Longhorn Decl. ¶ 8; Middleton Decl. Ex. 6, at 2.

      Shortly after Klimek was placed on leave and interviewed by the police, rumors about Plaintiff began circulating at EOCI. Compl. ¶ 17; Spooner Decl. Ex. 1, at 9. These rumors suggested that Plaintiff was lying about her allegations against Klimek, that she was part of a sex ring, that she had sex with Klimek to advance her career, and that she was sleeping with other officers in the parking lot. *Id.*; Spooner Decl. Ex. 1, at 8, 15, 17. Plaintiff was referred to as a "snake," a "lying bitch," and a "whore," though no one ever called her these names directly. Middleton Decl. Ex. 1, at 22. Plaintiff heard about the rumors daily from Officers Kammerzell and Olsen and a few other co-workers. Spooner Decl. Ex. 1, at 9, 13; Middleton Decl. Ex. 1, at 14. Plaintiff began having workplace issues with her coworkers as well as adults-in-custody ("AICs"). Spooner Decl. Ex. 1, at 6. In one instance, an AIC told Plaintiff, "Fuck off, I don't have to listen to you." Middleton Decl. Ex. 1, at 24. One AIC openly masturbated at Plaintiff, and another told her to "sit on his dick." Longhorn Decl. ¶ 13. In another instance, after Plaintiff wrote a disciplinary report against an AIC, a Sergeant at the prison told Plaintiff in front of the AIC that she had better not be lying. Middleton Decl. Ex. 1, at 23–24.

3 – OPINION & ORDER

In August 2020, an AIC told Plaintiff that other officers were talking about Plaintiff and Klimek. Longhorn Decl. ¶ 9. On August 24, 2020, Plaintiff emailed Superintendent Sue Washburn about coworkers spreading false information. Middleton Decl. Ex. 22. She included the names of specific officers involved and reported that AICs were hearing negative conversations about her. *Id.* Exs. 22–23. Superintendent Washburn forwarded Plaintiff's concerns to Erin Reyes, a human resources investigator at DOC. *Id.* Exs. 22–24. Plaintiff also verbally reported rumors to Superintendent Pedro and her shift supervisors on multiple occasions. Spooner Decl. Ex. 1, at 13–14. DOC's policy provides that if an employee makes a complaint of sexual harassment, including sexual teasing, jokes, and other sexual talk, human resources is required to investigate. Middleton Decl. Ex. 8, at 2–3; Ex. 14. However, because there was an ongoing criminal investigation into Klimek, and because Plaintiff was on leave intermittently, DOC did not open an administrative investigation into Plaintiff's reports of rumors or harassment. Middleton Decl. Ex. 5, at 10–14; Ex. 7 at 4–5. No one at DOC ever interviewed Plaintiff about the rumors or the harassment. Middleton Decl. Ex. 1, at 12. At some point, Plaintiff requested to change to the overnight or "graveyard" shift in order to avoid coworkers. Middleton Decl. Ex. 1, at 25–26. Plaintiff continued taking unpaid leave due to intense anxiety and panic attacks. Longhorn Decl. ¶ 12; Middleton Decl. Ex. 1, at 21.

Plaintiff testified to a grand jury on December 16, 2020 regarding the sexual assault. Longhorn Decl. ¶ 14. Klimek was indicted on six charges, including first-degree unlawful sexual penetration, first degree sodomy, first degree sexual abuse, two counts of second-degree sexual abuse, and one count of strangulation. Spooner Decl. Ex. 3. Klimek was arrested at EOCI two days later and placed on unpaid administrative leave. Rider Decl. Ex. 1, at 2, ECF No. 56. Plaintiff again went on leave. Longhorn Decl. ¶ 15.

In February 2021, DOC conducted a climate survey at EOCI regarding concerns about the treatment of female staff and the overall culture at EOCI. Spooner Decl. Ex. 2, at 5–6. Specifically, the concerns included that female staff were treated differently and subject to sexual harassment. *Id.* at 6. Multiple teams of investigators interviewed female employees at EOCI over the course of a few days. *Id.* at 8–9. The investigators asked the employees generally whether they ever experienced inappropriate behavior or felt uncomfortable at work. *Id.* at 7. DOC decided not to interview Plaintiff due to the pending criminal matters involving Klimek. Middleton Decl. Ex. 7, at 4–5. The climate survey resulted in about twelve to fourteen specific allegations that warranted individual personnel investigations by DOC. Spooner Decl. Ex. 2, at 10–11. Of the twelve to fourteen investigations that DOC conducted, none resulted in substantiated claims. *Id.* at 11.

On March 3, 2021, the Umatilla County Deputy District Attorney moved to dismiss the charges against Klimek, contending that the State could not prove the allegations beyond a reasonable doubt. Spooner Decl. Ex. 5. DOC returned Klimek to paid administrative leave where he remained duty stationed at home. Rider Decl. Ex. 1, at 3; Middleton Decl. Ex. 8, at 5–6. Plaintiff filed a BOLI complaint against DOC on March 7, 2021. Longhorn Decl. ¶ 17, Ex. A. On March 16, 2021, DOC requested a personnel investigation related to the state police report involving Klimek. Middleton Decl. Ex. 35. By this time, Plaintiff was out of available leave and still experiencing harassment at work. Longhorn Decl. ¶ 18. Unaware of the personnel investigation, she feared Klimek would return to work any day. *Id.* ¶ 16–17. Plaintiff resigned on May 13, 2021. Pedro Decl. Ex. 5, ECF No. 54. DOC terminated Klimek on January 24, 2022. Middleton Decl. Ex. 43.

5 – OPINION & ORDER

**STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The Court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

**DISCUSSION**

Plaintiff brings claims for hostile work environment, constructive discharge, and retaliation under Title VII, 42 U.S.C. § 2000e, and Or. Rev. Stat. § 659A.030,[3] as well as whistleblower retaliation under Or. Rev. Stat. § 659A.199. Plaintiff contends that DOC discriminated against her by subjecting her to a sexually hostile work environment, and further retaliated against her for reporting harassment. The Court addresses each claim in turn.

**I. Hostile Work Environment**

Title VII makes it illegal for an employer "to discriminate against any individual with respect to [] compensation, terms, conditions, or privileges of employment, because of such

---

[3] Because Oregon's employment discrimination provisions mirror Title VII, the Court analyzes Plaintiff's federal and state claims together. *See Tornabene v. Nw. Permanente, P.C.*, 156 F. Supp. 3d 1234, 1242 (D. Or. 2015) ("The substantive analysis for discrimination under Title VII of the Civil Rights Act (42 U.S.C. § 2000e-2(a)) and ORS § 659A.030(b) is substantially similar, and courts often analyze such claims together.").

individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment is a form of unlawful sex discrimination actionable under Title VII. *Swenson v. Potter*, 271 F.3d 1184, 1191 (9th Cir. 2001). To establish a hostile work environment claim based on sexual harassment, the plaintiff must show that (1) she was "subjected to verbal or physical harassment that was sexual in nature," (2) that the harassment was unwelcome, and (3) "that the harassment was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Dawson v. Entek Int'l*, 630 F.3d 928, 937–38 (9th Cir. 2011). The work environment "must be both objectively and subjectively offensive, one that a reasonable [woman] would find hostile or abusive, and one that the [plaintiff] in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998); *see also Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008). "[E]mployers are liable for failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." *Ellison v. Brady*, 924 F.2d 872, 881 (9th Cir. 1991) (quoting *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1515–16 (9th Cir. 1989)).

Courts must consider the totality of the circumstances to determine whether the harassment was sufficiently severe or pervasive, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). "The required level of severity or seriousness 'varies inversely with the pervasiveness or frequency of the conduct.'" *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) (quoting *Ellison*, 924 F.2d at 878). A work environment is considered abusive where "hostile conduct pollutes the victim's workplace, making it more

7 – OPINION & ORDER

difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." *Davis*, 520 F.3d at 1095 (quoting *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994)). "Offensive comments do not all need to be made directly to an employee for a work environment to be considered hostile." *Id.* However, "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not amount to a hostile work environment. *Id.* (quoting *Faragher*, 524 U.S. at 788).

Plaintiff contends that sexual rumors about her circulating throughout the prison negatively affected her ability to work as a corrections officer and created a hostile environment. Pl.'s Resp. 17–18, ECF No. 63. DOC argues that the rumors were not sufficiently severe or pervasive to alter the conditions of Plaintiff's employment. Def.'s Mot. 10, ECF No. 46. The Court finds that disputed issues of fact preclude summary judgment on Plaintiff's hostile work environment claim.

As to the first two elements of Plaintiff's hostile work environment claim, Plaintiff demonstrated that she experienced unwanted verbal harassment of a sexual nature. The rumors circulating throughout the prison included that Plaintiff had sex with Klimek to advance her career, that Plaintiff was part of a sex ring, and that she was having sex with other officers in the prison parking lot. Spooner Decl. Ex. 1, at 8–9, 15, 17. Additionally, Plaintiff was referred to as a "lying bitch" and "whore." Middleton Decl. Ex. 1, at 22. Such rumors and gendered name calling involving Plaintiff's sexual reputation are necessarily sexual in nature, and DOC does not contend otherwise.

As to the third element, the Court finds that a reasonable jury could conclude that Plaintiff's workplace was abusive. Plaintiff testified that she heard the rumors from her coworkers daily.  The emotional impact of this treatment required her to take leave multiple

8 – OPINION & ORDER

times due to anxiety and panic attacks. She switched to an overnight shift to avoid her coworkers. She experienced problems with AICs respecting her authority and began feeling unsafe at work. Plaintiff demonstrated that she perceived her work environment as hostile. Further, when viewing the facts in the light most favorable to Plaintiff, a reasonable woman could find Plaintiff's work environment objectively hostile and abusive. This is not a case of offhand comments or isolated incidents. The evidence reflects that Plaintiff was the subject of targeted, sexual rumors occurring on a regular basis for nearly a year. Particularly in the context of working in a prison, rumors of this sort could pose physical safety risks for a female officer. AICs were aware of rumors about Plaintiff and Klimek, and some began acting out toward Plaintiff. One can easily imagine why Plaintiff began feeling unsafe and unable to effectively work as a corrections officer when fellow officers refused to speak to her yet permeated the prison with derogatory rumors about her. Erin Reyes, a human resources investigator for DOC, explained that a law enforcement officer not having the support of her fellow officers can create safety issues on the job. Middleton Decl. Ex. 5, at 7–8. And Plaintiff did in fact feel that because her coworkers had no respect for her and wouldn't talk to her, she did not know whether her coworkers would "have [her] back if [she] need[ed] them to." Middleton Decl. Ex. 1, at 15. Plaintiff reported the rumors as well as her concerns about AICs hearing the rumors to her supervisors, and DOC took no remedial action. Considering the totality of the circumstances, there is sufficient evidence for a jury to find that the sexual harassment Plaintiff experienced was severe and pervasive enough to alter the conditions of her employment and create a hostile work environment.

      DOC argues the rumors were not that severe because no one ever said them directly to Plaintiff, and the rumors could not have significantly impacted Plaintiff as she took nearly five

months of leave during her one year of employment at the prison. Def.'s Reply 9–10, ECF No. 74. DOC is free to make these arguments of fact to a jury. Even in cases "where the severity of frequent abuse is questionable, it is more appropriate to leave the assessment to the fact-finder than for the court to decide the case on summary judgment." *Davis*, 520 F.3d at 1096. Because there are disputed issues of fact regarding whether the harassment of Plaintiff was sufficiently severe and pervasive to create an abusive work environment, summary judgment on Plaintiff's hostile work environment claim is denied.

## II. Constructive Discharge

Plaintiff also brings a claim for constructive discharge based on hostile work environment. To prove her claim for constructive discharge, Plaintiff must establish that her work environment became so intolerable that a reasonable person in Plaintiff's position would feel compelled to resign. *See Pa. State Police v. Suders*, 542 U.S. 129, 146–47 (2004); *Huskey v. City of San Jose*, 204 F.3d 893, 900 (9th Cir. 2000). The constructive discharge standard requires a greater showing of intolerable discriminatory working conditions in comparison to a hostile work environment claim. *Suders*, 542 U.S. at 146–47. However, "'[w]hether working conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question for the jury.'" *Huskey*, 204 F.3d at 900 (quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1411 (9th Cir. 1996).

Based on the facts detailed above, the Court finds that Plaintiff raised triable issues of fact as to whether a reasonable person in Plaintiff's position would have felt compelled to resign. In her resignation letter, Plaintiff stated that she could no longer handle the stress of the harassment from staff, and pointed to DOC's failure to do anything about it. Pedro Decl. Ex. 5. As the Court explained above, the harassing environment Plaintiff endured posed potential

physical safety risks to Plaintiff. A jury could find that a reasonable person in Plaintiff's position would feel compelled to resign because of intolerable harassment and safety concerns that her employer refused to address.[4]

### III. Retaliation

Title VII's anti-retaliation provision prohibits discrimination against an employee because that employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To make out a prima facie case of retaliation, Plaintiff must show that (1) she engaged in a protected activity, (2) DOC subjected her to an adverse employment action, and (3) a causal link exists between the protected activity and the adverse action. *See Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). "[A]n action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2004) (quoting *Ray*, 217 F.3d at 1243).

Plaintiff contends, and DOC does not dispute, that she engaged in protected activity when she reported Klimek's assault and harassment to DOC and the police. Pl.'s Resp. 24. Plaintiff asserts that she experienced two adverse employment actions:

---

[4] The Court notes that Oregon law requires an additional element for a constructive discharge claim: that "the employer desired to cause the employee to leave employment as a result of those working conditions *or* knew that the employee was certain, or substantially certain, to leave employment as a result of those working conditions." *McGanty v. Staudenraus*, 901 P.2d 841, 856-57 (Or. 1995). The Court finds that Plaintiff has raised disputed issues of fact precluding summary judgment on this issue. DOC knew about Plaintiff's concerns regarding harassment and AICs hearing false information about her, and knew that Plaintiff was taking significant amounts of leave. Plaintiff points to Erin Reyes' testimony explaining that a law enforcement officer not having the support of her fellow officers is a safety issue. Pl.'s Resp. 29; Middleton Decl. Ex. 5, at 7–8. Based on these facts, a reasonable jury could find that DOC knew Plaintiff was substantially certain to quit as a result of unchecked derogatory rumors and safety concerns on the job.

11 – OPINION & ORDER

retaliatory harassment by Klimek and her co-workers and DOC's failure to investigate her reports of harassment. *Id.* at 25–24.

A hostile work environment may serve as the basis for a retaliation claim under Title VII. *See Ray*, 217 F.3d at 1244–45. As the Ninth Circuit explained, "[h]arassment as retaliation for engaging in protected activity . . . is the paradigm of 'adverse treatment that is based on retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity.'" *Id.* at 1245. To establish a harassment-based retaliation claim, the plaintiff must show that the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment. *Id.*

Plaintiff here claims that she experienced retaliatory harassment by her co-workers after reporting Klimek's harassment and assault. Pl.'s Resp. 24. In addition to the rumors already discussed in detail above, Plaintiff refers to other incidents of retaliatory harassment that occurred after the criminal charges against Klimek were dropped in March 2021. *See* Pl.'s Resp. 12–14. In one instance, while Plaintiff was working the graveyard shift, an officer said over the intercom at her workstation, "Hi I swear we're not watching you on the cameras." Middleton Decl. Ex. 34. Another instance occurred just before Plaintiff resigned, where a security officer at the prison approached Plaintiff while she was waiting in the parking lot and told her she looked suspicious. *Id.* Ex. 37. Plaintiff reported both incidents to her supervisors at EOCI. *Id.* Exs. 34, 37.

Plaintiff's harassment-based retaliation claim rises and falls with her hostile work environment claim. For the retaliatory harassment to be actionable, Plaintiff must establish the elements of her hostile work environment claim. *See Ray*, 217 F.3d at 1245.

12 – OPINION & ORDER

As explained above, disputed issues of material fact as to the severity and pervasiveness of the harassment preclude summary judgment on Plaintiff's hostile work environment claim. To the extent that Plaintiff seeks to rely on the harassment as the basis for her retaliation claim, summary judgment is denied for the same reason.

Plaintiff asserts a second adverse employment action as DOC's denial of a privilege of employment, i.e. "the right to have her reports of harassment investigated and remedied." Pl.'s Resp. 24–25. As DOC points out, Plaintiff cites no authority in support of her theory that an employer's failure to investigate reports of harassment on its own can serve as an adverse employment action. The Ninth Circuit defines adverse employment actions under Title VII's anti-retaliation provision broadly. *See Ray*, 217 F.3d at 1240–42 ("[A] wide array of disadvantageous changes in the workplace constitute adverse employment actions."). "[A]n action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Id.* at 1243.

Though Plaintiff's claim is unique, the Court can conceive of a situation where an employer deliberately chooses not to investigate reports of harassment in retaliation for an employee engaging in protected activity. The Court therefore will not rule that, as a matter of law, an employer's failure to investigate reports of workplace harassment cannot constitute an adverse employment action.

Plaintiff alleges that she engaged in protected activity when she reported Klimek's sexual assault and harassment, and DOC retaliated against her by refusing to investigate her later reports of sexual rumors circulating throughout the prison and the ensuing harassment. Pl.'s Resp. 24–28. Causation is established by DOC stating that it

13 – OPINION & ORDER

would not investigate Plaintiff's reports of harassment due to the criminal investigation into Klimek, which resulted from Plaintiff's report of the sexual assault. Plaintiff also cites to DOC's policy of promptly investigating all reports of sexual harassment, arguing that there is "no good explanation for why the pending criminal charges against Klimek meant that DOC should not look into [Plaintiff's] reports of workplace harassment by [officers] other than Klimek." Pl.'s Resp. 25–27. There is no disagreement that these other allegations of harassment do not rise or fall with the criminal investigation of Klimek. The criminal prosecution of Klimek may be what fueled the harassment, but that is no reason for DOC to suggest that its hands were tied when it came to a prompt investigation of Plaintiff's workplace reports.

The Court finds that DOC's refusal to investigate the harassment Plaintiff experienced at EOCI after she reported Klimek's assault and harassment could reasonably deter an employee from engaging in protected activity. Plaintiff has therefore established a prima facie case of retaliation. Summary judgment is denied.

### IV. Whistleblower Retaliation

Oregon law prohibits discrimination and retaliation "against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation." Or. Rev. Stat. § 659A.199(1). To prove whistleblower retaliation, "a plaintiff must establish a causal link between her complaints about the violation of a law, rule, or regulation, on the one hand, and defendant's adverse employment actions, on the other." *Rohrer v. Oswego Cove, LLC*, 482 P.3d 811, 816 (Or. Ct. App. 2021).

14 – OPINION & ORDER

DOC's motion against Plaintiff's whistleblower retaliation claim fails for the same reasons as its motion against her employment discrimination retaliation claim. Plaintiff reported Klimek's sexual assault and DOC refused to investigate her later reports of rumors and harassment circulating throughout the prison. DOC's stated reason for not investigating the harassment was the criminal investigation into Klimek, which resulted from Plaintiff's report of the assault. The same triable issues of fact exist for Plaintiff's whistleblower and employment discrimination retaliation claims. Summary judgment is therefore denied.

## CONCLUSION

For the reasons explained herein, DOC's Motion for Summary Judgement (ECF No. 46) is DENIED.[5]


IT IS SO ORDERED.

DATED this 23rd day of May, 2023.


                                                      /s/ Michael J. McShane
                                                      Michael J. McShane
                                                 United States District Judge

---

[5] Per the parties' agreement, Plaintiff's claims for punitive damages alleged under her state law claims are dismissed.